WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In Re:<br><br>Phillip Lee Keesling,<br><br>    Debtor.<br><br>Flagstaff Ranch Mutual Waste Water Company; Flagstaff Ranch Golf Club; and Flagstaff Ranch Property Owners Association,<br><br>    Appellants,<br><br>v.<br><br>Phillip Lee Keesling,<br><br>    Appellee. | No.    CV 12-01053 -PHX-JAT<br><br>BK No.  2-10-bk-00433-CGC<br><br>**ORDER** |

Pending before the Court is an appeal from the bankruptcy court's April 24, 2012 Order granting Debtor's motion for summary judgment. The Court now rules on the appeal.

**I.   Background**

The bankruptcy court set forth the facts of the case as follows:

> Phillip Lee Keesling's ("Debtor") trust is the sole member of PCK Construction, LLC ("PCK") which purchased lots at the Flagstaff Ranch Golf Club in order to construct and sell homes. The Flagstaff Ranch Golf Club, the Flagstaff Ranch Mutual Waste Water Company, and the Flagstaff Ranch Property Owners Association (collectively, the "Flagstaff Ranch Entities") contend that PCK owes them money for membership dues, association fees, and sewer fees under various CC&Rs and other obligations relating to real property that PCK purchased in the Flagstaff Ranch Golf Club. The Flagstaff Ranch Entities

> filed a proof of claim in the Debtor's personal bankruptcy in an effort to recover PCK's debt, claiming that PCK was the Debtor's alter ego, and therefore the Debtor is personally liable for PCK's debts. The Debtor filed a motion for summary judgment ("Motion") arguing, among other things, that there is insufficient evidence as a matter of law to permit the Court to hold the Debtor personally liable for PCK's debts.

(Doc. 13-3 at 208-209).

The bankruptcy court granted summary judgment in favor of Debtor. The court found that Appellants did not present sufficient evidence showing that "PCK was the Debtor's alter ego and that respecting PCK's corporate status would sanction a fraud." (Doc. 13-3 at 213). With regard alter-ego, the bankruptcy court held that Appellants made no showing that PCK was or is undercapitalized, that PCK lacked corporate formalities, or that PCK failed to maintain books and records of account in reasonable order. (Doc. 13-3 at 210-211). With regard to fraud, the bankruptcy court stated that, at most, an argument could be made that Debtor commingled his personal funds with PCK's funds and disregarded the corporate form. The court held that, even assuming those facts, piercing the corporate veil would not be justified. (Doc. 13-3 at 213).

Additionally, although Appellants argued that they should be permitted to conduct discovery, the bankruptcy court granted Debtor's Motion for Protective Order Staying Discovery Pending Resolution of Debtor's Motion for Summary Judgment. (Doc. 13-3 at 174).

Appellants timely appealed to this Court and argue that the bankruptcy court (1) erred in granting summary judgment in favor of Debtor on Appellant's claim to pierce PCK's corporate veil and (2) abused its discretion in denying Appellants the opportunity to conduct additional discovery. (Doc. 13).

## II.   Jurisdiction and Standard of Review

The Court has jurisdiction over this case pursuant to 28 U.S.C.A. § 158(a), which provides that "district courts of the United States shall have jurisdiction to hear appeals . . . from final judgments, orders, and decrees . . . of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title." 28

U.S.C. § 158(a). The bankruptcy court's conclusions of law are reviewed de novo. *Compton Impressions, Ltd. v. Queen City Bank, N.A.*, 217 F.3d 1256, 1260 (9th Cir. 2000). The standard of review of a decision relating to discovery is whether the court abused its discretion. *KL Group v. Case, Kay & Lynch*, 829 F.2d 909, 915 (9th Cir. 1987).

### III. Discussion

On appeal, Appellants argue that the bankruptcy court erred as a matter of law in granting summary judgment for Debtor on Appellant's claim to pierce PCK's corporate veil and abused its discretion in denying Appellants the opportunity to conduct additional discovery. (Doc. 13 at 1).

#### A. Pierce the Corporate Veil

The bankruptcy court did not err in granting summary judgment to Debtor regarding piercing PCK's corporate veil. While Appellant has demonstrated that there is a material issue of disputed fact as to whether PCK is Debtor's alter-ego, there are no facts showing that observing PCK's separate existence would sanction a fraud or promote injustice. Because both elements are necessary to pierce the corporate veil, Debtor is entitled to a judgment as a matter of law.

In general, a corporation is treated as a separate entity, and the personal assets of a corporate officer may not be reached to satisfy corporate liabilities. *Loiselle v. Cosas Mgmt. Group, LLC*, 228 P.3d 943, 950 (Ariz. Ct. App. 2010). But courts will disregard the corporate entity and pierce the corporate veil if there is sufficient evidence that: (1) the corporation is actually the alter ego of one or a few individuals and (2) observance of the corporation's separate legal status would sanction a fraud or promote injustice. *Employer's Liab. Assurance Corp. v. Lunt*, 313 P.2d 393, 395 (Ariz. 1957). "The disregard of the corporate fiction has not been [limited] to instances where the incorporation is for fraudulent purposes, but may be observed if after organization the corporation is employed for fraudulent purposes." *Id.* at 396.

##### i. Alter-Ego Prong

In Arizona, "the alter-ego status is said to exist when there is such unity of interest and

1 ownership that the separate personalities of the corporation and owners cease to exist." *Dietel*
2 *v. Day*, 492 P.2d 455, 457 (Ariz. Ct. App. 1972). Corporate status, however, is not lightly
3 disregarded. *Chapman v. Field*, 602 P.2d 481, 483 (Ariz. Ct. App. 1979). As noted by the
4 bankruptcy court, "[a]lter ego status can be shown by: (1) under-capitalization; (2) failure to
5 maintain a separate corporate identity; (3) diversion of corporate property for personal use;
6 (4) lack of corporate formalities; and (5) failure to maintain books and records of account in
7 reasonable order." (Doc. 13-3 at 210) (citing 9 Brent A. Olson & Lisa C. Thompson, *Ariz.*
8 *Practice Series* § 34:17 (2011-2012 ed.); *Norris Chem. Co. v. Ingram*, 679 P.2d 567 (Ariz.
9 Ct. App. 1984); *Ariz. Pub. Serv. Co. v. Ariz. Corp. Comm'n*, 746 P.2d 4 (Ariz. Ct. App.
10 1987); *Honeywell, Inc. v. Arnold Const. Co.*, 654 P.2d 301, 307 (Ariz. Ct. App. 1982); *Butler*
11 *v. Am. Asphalt & Contracting Co.*, 540 P.2d 757 (Ariz. Ct. App. 1975)). The actions of the
12 corporation and owners must be "so closely intermix[ed] . . . such as to justify finding a
13 merger of identities." *Honeywell*, 654 P.2d at 307; *see Nash v. Nash*, 60 B.R. 27, 32 (B.A.P.
14 9th Cir. 1986) (stating that a constant course of commingling personal and business funds
15 "certainly points [towards alter-ego]").

16 Appellants argue that the bankruptcy court erred as a matter of law in granting
17 summary judgment. (Doc. 13). Appellants claim PCK's corporate veil should be pierced
18 because Debtor diverted corporate property for private use and failed to maintain a separate
19 corporate identity. (Doc. 13 at 7). Specifically, Appellants argue that Debtor regularly and
20 systematically used PCK's bank account for his own benefit and transferred a Cadillac from
21 PCK to himself. (Doc. 13 at 7-8).

22 PCK was formed in 1998 to acquire, develop, and sell residential properties. (Doc. 14
23 at 7). In 2002, PCK purchased eight lots of land in the Flagstaff Ranch Development. (*Id.*).
24 Only one house was built, and the rest of the lots were never developed. (*Id.*). On January
25 8, 2010, Debtor filed his individual Chapter 11 bankruptcy petition. At that time, Appellants
26 filed their proofs of claim in bankruptcy court against Debtor and later filed another lawsuit
27 against PCK itself in September 2011. (*Id.*). During the course of the bankruptcy, Debtor
28 deposited over $800,000 of rental income derived from rental property unrelated to PCK into

PCK's bank account and later withdrew that money for his own benefit. (Doc. 13 at 7). The bankruptcy plan of reorganization, which Appellants were aware of and did not object to, transferred the Cadillac from PCK to Debtor. (Doc. 13-1 at 46).

It is undisputed that Debtor deposited money into PCK's bank account and then used it for his own benefit. Appellants cite *Warne Investments LTD. v. Higgins*, 195 P.3d 645 (Ariz. Ct. App. 2008) for the proposition that, once Debtor deposited money into PCK's bank account, it belonged to PCK and therefore Debtor's use of the money for his own benefit was a diversion of assets. (Doc. 13 at 9-10). Conversely, Debtor argues that the money, which was property of Debtor's estate, flowed through PCK's bank account only as a matter of convenience, to give Debtor quicker access to the funds than he would have if the money were deposited directly into his own account. (Doc. 14 at 7). Debtor disputes that the money automatically became PCK's and argues that, at most, Appellants have shown that Debtor commingled his funds with those of PCK. (Doc. 14 at 6). Debtor claims that, even if there was commingling of funds, that is insufficient to establish alter-ego. (Doc. 14 at 7).

Additionally, Appellants state that Debtor diverted PCK assets by transferring a Cadillac, along with the obligation to pay the underlying loan, from PCK to himself. (Doc. 13 at 10). Appellants argue that, even though Debtor assumed the loan, the reasonable inference from the evidence is that Debtor stripped PCK of an asset. (Doc. 15 at 5-6). While Debtor does not dispute that the Cadillac was transferred, he argues that the transfer does not constitute a diversion of assets because the lien on the Cadillac was also transferred to Debtor and the Cadillac did not have any equity. (Doc. 14 at 7). Additionally, Debtor argues, Appellants had an opportunity to object to the transfer of the Cadillac in the plan of reorganization and did not do so. (Doc. 14 at 14).

*Warne* is inapplicable to this case. *Warne* involved a corporate officer depositing money into the business' account in order to keep the business afloat. The court characterized the officer's deposits as "a partial repayment of the shareholder loans" or "an additional capital contribution." *Warne*, 195 P.3d at 654. Here, Debtor was not depositing money into PCK's account in order to meet the business' obligations; he was depositing money into the

- 5 -

account to later withdraw for his own personal expenses. The money deposited into the PCK account did not automatically belong to PCK once it was deposited.

While Debtor's money did not automatically belong to PCK when it was deposited in PCK's account, drawing all reasonable inferences in favor of Appellant, there is a material issue of fact as to whether Debtor's use of PCK's account amounts to commingling of funds sufficient to establish alter-ego. In regard to the transfer of the Cadillac, however, this Court agrees with the bankruptcy court that there is no proof that the transfer from PCK to Debtor resulted in any loss to PCK. Thus, Appellants have demonstrated that there is a material issue of disputed fact as to whether Debtor's funneling of funds through PCK's account is sufficient to establish the alter-ego prong of the test to pierce the corporate veil.

**ii.     Fraud prong**

Fraud may be found where incorporation is for fraudulent purposes or where, after organization, the corporation is employed for fraudulent purposes. *Employer's Liab. Assurance Corp. v. Lunt*, 313 P.2d 393, 396 (Ariz. 1957). "[I]t is incumbent upon the one seeking to pierce the corporate veil to show by a preponderance of the evidence that the financial setup of the corporation is only a sham and causes an injustice." *Ize Nantan Bagowa, Ltd. v. Scalia*, 577 P.2d 725, 729 (Ariz. Ct. App. 1978). A showing of alter-ego alone does not constitute a fraud or injustice. *Chapman*, 602 P.2d at 484; *In re Nash*, 60 B.R. at 29 ("[D]isregard for the corporate form coupled with a constant course of commingling of personal and corporate funds [does] not justify piercing the corporate veil . . . . [F]raud must be shown in order to disregard the corporate form.").

Appellants claim that recognizing PCK's corporate form would sanction a fraud because Debtor "was taking money belonging to PCK to the detriment of other creditors." (Doc. 13 at 15). As the Court has determined, however, the money withdrawn from PCK's account did not belong to PCK. Additionally, there is no evidence that the Cadillac had any value or that transferring the Cadillac along with the obligation to pay PCK's loan on it to Debtor was to the detriment of other creditors. On the issue of commingling of funds, Appellants have not demonstrated any evidence as to how Debtor's use of PCK's bank

account would meet this prong. Thus, the Court finds that Appellants have not shown facts suggesting that recognizing PCK's corporate existence would sanction a fraud or promote injustice.

### B. Discovery

There is generally a "broad right of discovery" because "wide access to relevant facts serves the integrity and fairness of the judicial process by promoting the search for the truth." *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993). A party's right to discovery is not unlimited, however. *Epstein v. MCA*, 54 F.3d 1422, 1423 (9th Cir. 1995). A discovery request must be "relevant to the subject matter involved in the pending action" or "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). "A party requesting a continuance pursuant to Rule 56(f) must identify by affidavit the specific facts that further discovery would reveal, and explain why those facts would preclude summary judgment." *Tatum v. San Francisco*, 441 F.3d 1090, 1100 (9th Cir. 2006); *see also United States v. Kitsap Physicians Service*, 314 F.3d 995, 1000 (9th Cir. 2002) ("Failure to comply with [the requirements of Rule 56(f)] is a proper ground for denying relief.").

The standard of review of a decision relating to discovery is whether the court abused its discretion. *KL Group*, 829 F.2d at 915. Appellants have the burden of showing how additional discovery would have precluded summary judgment. *Qualls v. Blue Cross Inc.*, 22 F.3d 839, 844 (9th Cir. 1994). A court will "only find that the [bankruptcy] court abused its discretion if the movant diligently pursued its previous discovery opportunities, and if the movant can show how allowing additional discovery would have precluded summary judgment." *Id.* (emphasis omitted).

Appellants assert in their Opening Brief that they did not expect discovery to show that PCK was undercapitalized at its inception, that PCK was always intended to be a sham, or that Appellants were somehow confused about whether they were dealing with PCK or Debtor. Appellants assert that they did expect to find "more evidence to support that PCK was the alter ego, and [that Debtor's] domination of PCK, was furthering a fraud or

1  injustice." (Doc. 13 at 22). In the declaration to the bankruptcy court supporting Appellants'
2  opposition, per Rule 56(f), counsel stated that he had not received responses to
3  interrogatories and requests for production of documents related to PCK's business such as
4  tax returns, bank records, profit and loss statements, and contracts. (Doc. 13-3). The
5  declaration stated that Debtor previously disclosed transferring money into and out of PCK's
6  account and that "[w]ithout discovery from the Debtor, it is impossible to know the full
7  extent of the personal obligations that were paid from PCK's account." (*Id.*).

8  Appellants' counsel's declaration to the bankruptcy court did not identify the "specific
9  facts" that further discovery would have revealed or explain why those facts would have
10 precluded summary judgment. The declaration stated that Debtor has not responded to
11 several discovery requests. The declaration did not, however, refer to any specific fact in
12 these interrogatories and documents or explain why the information contained in them was
13 "essential to justify [Appellants'] opposition." Fed. R. Civ. P. 56(f).

14 In the materials submitted to the bankruptcy court, Appellants showed only that
15 Debtor deposited his own money into PCK's account and then used PCK's account to pay
16 for personal expenses and that an asset with little or no value was transferred to Debtor
17 subject to the obligations on the asset. Additionally, Appellants gave no showing of fraud by
18 Debtor. The declaration's assertion that "the full extent" of Debtor's control over PCK
19 cannot be known without further discovery is not sufficiently specific to allow further
20 discovery regarding alter-ego; it also fails to address any fraud or injustice—an ultimate
21 requirement to preclude summary judgment. In the absence of a showing of specific facts that
22 further discovery would produce, this evidence to the bankruptcy court was insufficient to
23 warrant a continuance. Because Appellants did not satisfy the requirements of Rule 56(f) by
24 showing how additional discovery would have revealed specific facts precluding summary
25 judgment, the bankruptcy court did not abuse its discretion by denying their request for a
26 continuance.

27 **IV.    Conclusion**
28 Based on the foregoing,

- 8 -

1  **IT IS ORDERED** that the decision of the bankruptcy court on Debtor's Motion for
2  Summary Judgment is affirmed. Pursuant to Federal Rule of Bankruptcy Procedure 8016(a),
3  the Clerk of the Court shall enter judgment consistent with this Order.
4  DATED this 19th day of November, 2012.

James A. Teilborg
United States District Judge